UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE IRON WORKERS'
LOCAL NO. 25 PENSION FUND, IRON
WORKERS' HEALTH FUND OF EASTERN
MICHIGAN, IRON WORKERS' LOCAL
NO. 25 VACATION PAY FUND; AND
IRON WORKERS' APPRENTICE FUND
OF EASTERN MICHIGAN,

    Plaintiffs,                                Case No. 09-13601

v.                                         HONORABLE DENISE PAGE HOOD

KVM DOOR SYSTEMS, INC.,
KENNETH L. VALICE, AND
MICHAEL D. KEIGHLEY,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER
REGARDING MOTIONS FOR SUMMARY JUDGMENT
AND MOTION TO FILE COUNTER-COMPLAINT AND AFFIRMATIVE DEFENSE
and
NOTICE SETTING FINAL PRETRIAL CONFERENCE**

**I.    BACKGROUND**

This matter is before the Court on three motions: 1) Motion for Summary Judgment filed by Defendants KVM Door Systems, Inc. ("KVM"), Kenneth L. Valice ("Valice") and Michael D. Keighly ("Keighly"); 2) Motion for Summary Judgment filed by Plaintiffs Trustees of the Iron Workers' Local No. 25 Pension Fund, Iron Workers' Health Fund of Eastern Michigan, Iron Workers' Local No. 25 Vacation Pay Fund, and Iron Workers' Apprentice Fund of Eastern Michigan (collectively, "Iron Workers" or "Funds"); and, 3) KVM's Motion to File Counter-Complaint. Responses and replies have been filed to all motions and a hearing held on the matter.

The Iron Workers' Funds are established under and administered pursuant to Section 302 of the

Labor Management Relations Act, 29 U.S.C. § 186 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* KVM has been a signatory to the Collective Bargaining Agreement with Iron Workers. Under the contract, KVM is required to pay, in addition to wages, certain fringe benefits, including pension and healthcare benefits on behalf of its employees performing work covered by the Collective Bargaining Agreement. KVM paid its Iron Worker participant employees two paychecks: one for 40 hours of work per week, for which employee benefit contributions were made and the second check was for additional hours for which employee benefit contributions were not paid. Valice and Keighley ran the day-to-day operations of the company and had the actual authority to determine what, if any, contributions were going to be paid on behalf of KVM's employees into the Funds. Valice and Keighley are fiduciaries regarding the Funds' assets.

KVM's labor employees generally range between eight and ten. The workers fall into different categories, including iron workers, carpenters, operators and millwrights. KVM also has non-union employees, including those who do concrete work, small service work, residential work and various jobs in the warehouse, such as framing automatic glass doors and building of pit steel. Certain work by KVM's employees is considered "covered work" under the Collective Bargaining Agreement, and other work is not covered. About forty percent of KVM's work is commercial overhead work for which iron workers would be used. KVM asserts its employees are given time cards and daily logs to document their work and to keep track of the breakdown of covered work and uncovered work. Valice gathers the information from the cards, logs it, and then the information is forwarded to KVM's accountant, Brian Eschenberg.

Robert Reeves performs audits on behalf of the Iron Workers' Funds. For about 25 years, Reeves has been auditing companies that are parties to collective bargaining agreements, such as the agreement between KVM and Iron Workers' Funds. Mr. Reeves would receive contribution reports

monthly from KVM. The reports include workers' names, Social Security numbers and hours and wages accrued. The report also lists the fringe benefit rates applicable to the hours and wages. KVM also submits reports regarding submission into the Iron Workers' Funds. An audit is generally performed every 2 ½ to 3 years, or if there are complaints or concerns raised.

For years 1997 to 2008, the Iron Workers' Funds' auditor has either approved of KVM's contributions or identified a minor difference between what was paid and what should have paid. In those years where an underpayment was identified, KVM paid the difference without objection. KVM claims that the lawsuit was initiated because a KVM subcontractor failed to pay benefits; that dispute is now resolved. During the proceedings, KVM claims that another subcontractor, Glen Zaits, a former employee of KVM, contacted the Iron Workers' Funds regarding KVM's alleged unpaid fringe benefits under the Collective Bargaining Agreement. KVM asserts that Zaits' contact with the Iron Workers' Funds appears to be in retaliation for KVM's firing of Zaits in July 2009. Based on Zaits' allegations, KVM contends that the Iron Workers' Funds now seek to reopen previously audited years and revisit the covered and uncovered work performed by KVM's employees. KVM asserts it did not retain many of the documents the Iron Workers' Funds now allege KVM did not properly maintain as required by ERISA.

The Iron Workers' Funds re-audited the period of 2004 to 2008 during this litigation. The audit revealed the amount due is $892,243.56, which consists of unpaid contributions and liquidated damages pursuant to the contract based on the additional hours revealed by the audit which were not reported by KVM in the initial audits. The Iron Workers' Funds assert that discovery is closed and KVM is unable to show that the work performed found in the re-audit is not "covered" work under the contract as argued by KVM. KVM claims that the Iron Workers' Funds refused to further question KVM regarding the documents it produced to support KVM's assertion that the additional hours were work

3

not covered by the contract.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

Rule 56(c) of the Rules of Civil Procedures provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. KVM's Motion for Summary Judgment

#### 1. Estoppel

KVM's Motion for Summary Judgment argues that the Iron Workers' Funds are estopped from

arguing any delinquent contributions from the time periods covered by earlier audits. The Iron Workers' Funds respond that KVM has not met the elements as required to apply equitable estoppel.

In an ERISA case, the Sixth Circuit Court of Appeals has set forth the elements for equitable estoppel to be applied: 1) a conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped, that the representation be acted on, or conduct toward the party asserting estoppel, such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting estoppel; and 5) detrimental and justifiable reliance by the party asserting the estoppel on the presentation. *Trustees of the Michigan Laborers' Health Care Fund v. Gibbons,* 209 F.3d 587, 591 (6th Cir. 2000). All the elements must be shown to apply estoppel. *Id.*

Applying the elements set forth above, the Court finds that there are genuine issues of material fact which preclude summary judgment based on estoppel. KVM has met the first element because the Iron Workers' Funds actions after the initial audits amount to a representation of a material fact–that KVM's contributions were sufficient. There is a question of fact as to the second element because the Iron Workers' Funds presented evidence that they were not aware of the true facts of the submitted hours by KVM until this litigation when the Funds discovered KVM employees were paid with two checks. (Resp., Exs D, E, A) By their actions, KVM has shown that the Iron Workers' Funds intended that KVM believe that the previous audits resolved KVM's contributions during the audited period, meeting the third element. Like the second element, there is a genuine issue of material fact as to the fourth element--whether the Iron Workers' Funds were unaware of the true facts regarding the hours submitted by KVM to the Funds' auditor. (Resp., Exs. A and M) There is a genuine issue of material fact as to the fifth element because KVM may have justifiably relied on the Funds' actions after the earlier audits but such reliance may not be detrimental to KVM if it can be shown that the two check

5

system was instituted to circumvent ERISA requirements.

KVM's Motion for Summary Judgment based on estoppel is denied, the Court finding that there is a genuine issue of material fact on whether estoppel is applicable.

### 2. Auditor as Expert

KVM next argues that the Iron Workers' Funds' auditor is not qualified to testify as an expert as to what work is considered "covered" under the Collective Bargaining Agreement, therefore the Iron Workers' Funds are unable to show that KVM did not comply with the contract. In response, the Iron Workers' Funds assert that their auditor is not offered as an expert in the work jurisdiction underlying the Collective Bargaining Agreement, but to establish the numbers revealed in the audits. The Iron Workers' Funds agree that the auditor is not a drafter or negotiator of the Agreement and the auditor must rely on input from the contributing contractor and the bargaining parties to the contract.

Because the Iron Workers' Funds are not offering the auditor as an expert on the issue of what work is covered under the Collective Bargaining Agreement, KVM's Motion for Summary Judgment is granted in part in that the auditor will not testify as to whether certain work is covered under the Agreement. KVM's Motion for Summary Judgment is denied as to whether or not the Iron Workers' Funds are able to establish that the hours at issue are covered under the Collective Bargaining Agreement. The Iron Workers' Funds submitted evidence that the hours worked by KVM's employees were covered work under the Agreement. (Resp., Exs. D and L) There is a genuine issue of material fact that the hours at issue are considered covered work under the Collective Bargaining Agreement.

### C. The Iron Workers' Funds' Motion for Summary Judgment

#### 1. Failure to Maintain Record Keeping and Intentional Underfunding

The Iron Workers' Funds assert that KVM breached the Collective Bargaining Agreement by failing to maintain required records in violation of the Agreement and ERISA. They argue that KVM

6

failed to provide documents during discovery to establish contributions are not due for the additional hours revealed in the re-audit.

In response, KVM does not dispute it has a duty under the Agreement and ERISA to contribute to the Funds. KVM asserts that since 1996, it has made payments to the Funds in excess of $1,750,000 and has not shirked its responsibilities under the Agreement. KVM provided in the prior years and during this litigation all documentation the Iron Workers' Funds have requested. The documentation is voluminous. KVM argues that it was the Iron Workers' Funds who has refused to question KVM's principal regarding the daily job logs KVM presented to show that the additional hours are not covered under the Agreement. KVM maintains that the additional hours are not covered work under the Agreement.

The Iron Workers' Funds reply that Valice, KVM's principal, testified at his deposition that KVM had no particular retention policy and that the daily logs were not used to record covered or not covered work but were used for invoicing purposes. (Valice Dep., pp. 22, 52) They argue that Valice's affidavit contradicting his deposition testimony should not be considered.

Valice's affidavit, which is contrary to his deposition as to the daily logs, cannot create a genuine issue of material fact as to the use of the daily logs. A party cannot create a genuine issue of fact to survive summary judgment by submitting an affidavit that contradicts sworn testimony. *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986). However, there remains a genuine issue of material fact as to whether KVM properly maintained the records as required by the Collective Bargaining Agreement and ERISA in light of previous audits performed by the Iron Workers' Funds. As noted above in KVM's Motion for Summary Judgment, there remains a question of fact that promissory estoppel may be applicable in this case based on the previous audits performed by the Funds and KVM having paid outstanding payments revealed from the audits. The Iron Workers' Funds have

7

not presented any law that requires a company to keep records for a certain amount of time after the company has been audited and the company has paid outstanding payments after the audit was performed. Although there may not be sufficient documentation provided in discovery regarding KVM's prior bookkeeping methods and its retention policy, Valice testified at his deposition that KVM offered benefits to its employees whether they worked 40 hours or less and that beyond the 40 hours worked KVM was not required to provide benefits. (Valice Dep., pp. 37-40) Valice possess personal knowledge regarding KVM's policy on how KVM determined if the hours worked were covered under the Agreement. The Iron Workers' Funds' Motion for Summary Judgment is denied on this issue.

### 2. Individual Defendants' Liability

The Iron Workers' Funds argue that the individual defendants should be found personally liable for the unpaid contributions based on violations of their fiduciary duties under ERISA. KVM admits that the individual defendants are fiduciaries and are liable for unpaid contributions if it is found they violated their fiduciary duties. (KVM's Resp., p. 9)("They also argue that Defendants would be liable for any unpaid contributions, as they are fiduciaries under 29 USC § 1109. Defendants do not dispute this.") Given that KVM does not dispute the individual Defendants are fiduciaries and are liable for unpaid contributions, the Court finds summary judgment in favor of the Iron Workers' Funds if it is found the individual defendants violated their fiduciary duties.

### D. KVM's Motion to File Counter-Complaint and Affirmative Defense

KVM seeks to file a Counter-Complaint for Unjust Enrichment and an affirmative defense of set-off arguing that through discovery, it has been shown that KVM overpaid the Iron Workers' Funds. KVM argues that all the documents have been produced and further discovery is not required on this claim. Iron Workers' Funds respond that the motion is untimely and futile, but agree no further discovery is required.

8

Rule 15(a)(2) of the Rules of Civil Procedure provides that a party may amend its pleading on leave of court. Leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, if a complaint cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

A review of the proposed Counter-Complaint reveals that KVM has stated a claim to recoup contributions made in error. Valice testified at his deposition that even if an employee did not work 40 hours as required by the Collective Bargaining Agreement, KVM paid for the employee's benefits beyond the hours the employee actually worked. (Valice Dep., pp. 37-40) As agreed to by the Iron Workers' Funds, further discovery is not required. KVM's Counter-Complaint and Affirmative Defense of Set-Off will be allowed to be filed.

### III.    CONCLUSION

For the reasons set forth above,

IT IS  ORDERED that Defendants' Motion for Summary Judgment **[Doc. No. 25, filed 7/15/2010]** is DENIED IN PART and GRANTED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Counter-Complaint and to Add Affirmative Defense **[Doc. No. 26, filed 7/16/2010]** is GRANTED. Defendants shall file the Counter-Complaint and Affirmative Defense within 14 days from the entry of this Order.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment **[Doc. No. 27, filed 7/19/2010]** is DENIED IN PART and GRANTED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Response Brief to Reply Brief **[Doc. No. 35, filed 9/8/2010]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Response Brief to Reply

9

Brief **[Doc. No. 36, filed 9/8/2010]** is GRANTED.

IT IS FURTHER ORDERED that a Final Pretrial Conference is set for **Monday, May 23, 2011, 2:15 p.m.**.  The proposed *Joint Final Pretrial Order* must be submitted by May 16, 2011.  A Trial Date will be scheduled at the Final Pretrial Conference.  If the parties agree to participate in a settlement conference with the magistrate judge prior to the Final Pretrial Conference the parties may contact the Court for an order referring the matter to the magistrate judge.

          s/Denise Page Hood
          Denise Page Hood
          UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2011, by electronic and/or ordinary mail.

          s/LaShawn R. Saulsberry
          Case Manager, (313) 234-5165